IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Samuel Barnes**, on behalf of himself and all others similarly situated,<br><br>**Plaintiff,**<br>v.<br><br>**Winking Lizard, Inc.**, *et al.,*<br><br>**Defendants.** | Case No. 1:18CV952<br><br>JUDGE PATRICIA A. GAUGHAN<br><br>**JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT, WITH FINAL ORDER ENTERING STIPULATED JUDGMENT** |

Plaintiff Samuel Barnes ("Representative Plaintiff," "Class Representative," or "Plaintiff"), on behalf of himself and the members of the Settlement Classes ("Class Members"), and the named Defendants collectively d/b/a "Winking Lizard Tavern," (collectively "Defendants"), hereby jointly move the Court for final approval of the Class Action Settlement Agreement ("Settlement Agreement" or "Settlement") between Plaintiff and Defendants pursuant to Fed. R. Civ. P. 23(e). Plaintiffs further support this joint motion for final approval with Plaintiffs' Unopposed Motion for Final Approval of Attorney's Fees, Costs, and Service Payments, filed contemporaneously herewith.

## I. BACKGROUND AND SUMMARY OF CLAIMS AT ISSUE

Plaintiff Barnes filed this action against Defendants alleging a collective action under the Fair Labor Standards Act ("FLSA") and a state law class action under the Ohio Minimum Wage Fair Standards Act ("OMWFSA").[1] Defendants own and operate Winking Lizard branded restaurants, exclusively within the state of Ohio. Plaintiffs, on behalf of all salary-paid Assistant

---

[1] "The Ohio statute 'expressly incorporates the standards and principles found in the FLSA.'" *Nasrallah v. Lakefront Lines, Inc.*, No. 1:17 CV 69, 2017 U.S. Dist. LEXIS 80500, at *8 n.1 (N.D. Ohio May 25, 2017) (*quoting Thomas v. Speedway Super America, LLC*, 506 F.3d 496, 501 (6th Cir. 2007)).

1

Kitchen Managers ("AKM") and salary-paid Managers in Training ("MIT") training to become validated as Assistant Managers, claim that they were misclassified as exempt and, therefore, not paid overtime allegedly required by law in connection with their employment with Defendants for overtime hours worked. In response, Defendants denied all allegations of wrongdoing and denied liability. Thereafter, the Parties engaged in extensive exchanges of information underlying Plaintiff's claims including full time and payroll data for all potential class members, and engaged in arms-length negotiations during private mediation with mediator Jerome Weiss. Through the mediation process, which required additional negotiations with the assistance of the mediator after the in-person mediation concluded without an agreement, the Parties eventually reached a settlement in which both sides compromised their positions in order to avoid the expense and uncertainty of continued litigation. Head Decl., ¶ 11.

## II. THE SETTLEMENT AND MONETARY/NON-MONETARY BENEFITS TO CLASS

The Parties' Settlement and Release Agreement (the "Settlement Agreement") was attached to the Parties' preliminary approval motion as Exhibit 1 [ECF No. 13-2]. The Parties agree and submit that the terms and conditions of the settlement are fair, reasonable, and in the best interest of the Parties. The Parties entered into the Settlement Agreement because it reflects a reasonable compromise of the Parties' disputed issues and any actual or potential claims.

Under the terms of the Settlement Agreement, Defendants will deposit a total sum of One Million One Hundred and Twenty-Five Thousand Dollars ($1,125,000.00) ("Total Settlement Amount") into a Qualified Settlement Fund ("QSF") administered by the Settlement Administrator, RG/2 Claims ("Settlement Administrator" or "RG/2"), from which all Court-approved attorney's fees and costs, Settlement Administrator's costs, and service awards will be paid, and against which net amount remaining after those payments ("Net Settlement Fund") the individual plaintiffs will receive their settlement shares. In addition to the named Plaintiff (Samuel Barnes) and the one opt-in Plaintiff (Thomas J. Barnes), there are 148 putative FLSA collective action members (total of 150) for the relevant period (79 were MITs but never AKMs, 42 were MITs who then became AKMs, and 29 were only AKMs, within the relevant FLSA period).

2

Plaintiffs' counsel has filed a declaration filed under seal further summarizing the value of this settlement recovery compared to each parties' respective mediation calculations of potential damages, pursuant to the Court's Order granting the Joint Motion to file that information under seal. [ECF No. 15].

The Settlement Agreement provides for settlement-purposes-only certification of the following collective and class actions for salary-paid MITs and AKMs classified and paid as exempt: (i) a FLSA collective action that includes those individuals paid as exempt from the earlier of (a) three years preceding the filing date of their Consent in the Action, or (b) three years preceding May 15, 2018, until the Release Effective Date (the "collective action"), and (ii) a class action under OMWFSA that includes those individuals paid as exempt from the date two years preceding the April 25, 2018 Complaint filing date until the Release Effective Date, pursuant to the applicable two year statute of limitations under O.R.C. § 2305.11(A) (the "class action") (collectively comprising the "Class Members"). There were approximately 150 potential FLSA collective action members and 99 OMWFSA class action members.

The Settlement Agreement contains fair release terms that are limited in scope to the overtime claims at issue. This settlement does not require a Class Member to give a general release of all claims (except, contingent on Court approval of Service Payments, the named Plaintiff and original opt-in Plaintiff who will give a general release in exchange for those Service Payments). Consistent with the FLSA's opt-in (rather than opt-out) procedures under 29 U.S.C. § 216, the settlement also does not require a Class Member to release any FLSA claims unless the Class Member claims his or her individually offered additional FLSA payment in exchange for consenting to join the lawsuit and affirmatively accepting a release of FLSA claims.[2]

---

[2] Moreover, if a State Law Class Member does not consent to join the litigation and waive FLSA claims, then as to State Law Class Members the release provision provides: "(i) the only claims released are those specified in the State Law Release, as to State Law Class Members, and (ii) the parties agree that the assertion and release of the claims within the State Law Release shall have no collateral estoppel, claim splitting, res judicata, waiver, or other claim preclusion effect as to claims not explicitly released herein (including, but not limited to, FLSA claims)."

3

For the FLSA claims, each plaintiff who opted in to the settlement will upon final approval receive a portion of the Net Settlement Fund amount allocated to settlement of FLSA claims as set forth in the Settlement Agreement based on the number of workweeks worked by each plaintiff for which workweek the individual was paid as exempt from applicable overtime laws on a pay date within the period beginning three years preceding the earlier of (i) the filing date of their Consent in the Action, or (ii) May 15, 2018, and ending on the Release Effective Date, at different valuation calculations depending on whether the workweeks were paid within the period beginning two years preceding the filing date of the Complaint, or in the third year preceding the Complaint filing date (which third year is only available if a plaintiff proves that the FLSA violation was "willful"). (*See* Section 9 of the Settlement Agreement [ECF No. 13-2]).

For the OMFWSA claims, each plaintiff who did not timely exclude themselves from the settlement (none did so) will upon final approval automatically receive an amount calculated under Section 9 of the Settlement Agreement from the Net Settlement Fund amount allocated to settlement of OMWFSA class claims as set forth in the Settlement Agreement. The formula used to determine each plaintiff's share of the Net Settlement Fund for OMFWSA claims was based on the number of workweeks worked by each individual for which workweek the individual was paid as exempt from applicable overtime laws on a pay date within the period beginning two years preceding the April 25, 2018 Complaint filing date until the Release Effective Date.

Thus, upon final approval, the Settlement Agreement will provide Plaintiffs with monetary consideration without the risk that they will recover nothing in this action[3] or that any verdict will be overturned on motion or appeal by Defendants.

In addition to those monetary benefits secured for the Class Members by this litigation, in connection with this settlement Defendants acknowledge that they reclassified all MITs to non-exempt pay status in or about September, 2018, and have reclassified certain AKMS to non-exempt

---

[3] "Whatever the relative merits of the parties' legal positions, there is no risk-free, expense-free litigation." *Sheick v. Auto. Component Carrier LLC*, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010).

4

and will reclassify all AKMs to non-exempt pay status by no later than the Release Effective Date. This equitable consideration, however, is in no way an admission of liability by Defendants, and Defendants maintain that all of its relevant employees were properly classified under the relevant wage and hour laws and compensated appropriately. Defendants represent that they agreed to this equitable relief out of business and practical concerns, only.

Finally, as an additional non-monetary benefit negotiated for Class Members, upon the Release Effective Date Defendants will provide "a release limited solely to any known or unknown claims any Defendant may have against [Class Members] arising out of their participation in and/or receipt of payment from the Settlement and/or assertion of the claims in or by joining the Action (including but not limited to any claims that assertion of any claims released by any Plaintiff or Class Member breached any agreement with or obligation to any Defendant), and release any claims against Named Plaintiff, Opt-in Plaintiff, or a Class Member for pursuing the claims that were at issue in the Action or any claims for recoupment of any amounts paid for the work performed as AKMs or MITs paid as exempt or severance or release payments made to an Class Member through the Release Effective Date." Settlement Agreement [ECF No. 13-2], ¶ 24.

### III. THE SETTLEMENT NOTICE PROCESS AFTER PRELIMINARY APPROVAL

On December 6, 2018, the Court granted the Parties' Joint Motion for Preliminary Approval of Class and Collective Action Settlement, conditionally certified FLSA Collective and State Law Class Settlement Classes, approved the distribution of notices to the Class Members,[4] ordered that any requests for exclusion or written objections must be submitted within 45 days after issuance of notice, and set a Final Approval hearing for March 7, 2019 [ECF No. 16]. By request, the Court's December 29, 2018 Order rescheduled that hearing to March 26, 2019.

---

[4] In the Joint Motion for Preliminary Approval, it states that any uncashed settlement checks will be deposited with the state unclaimed property department. *See* Motion for Preliminary approval at pg. 22. This was inadvertent error. The Parties' Settlement Agreement provides that uncashed checks will become void if not cashed in time. That provision was opposed by counsel for plaintiffs and ultimately resolved by the mediator following argument by the parties.

On January 9, 2019, the Settlement Administrator, RG/2 Claims Administration ("RG/2"), issued 150 notices to the Class Members by both U.S. Mail and email. The Parties submit a Declaration from Melissa Baldwin at RG/2 verifying that the notices were distributed to the Class Members in the form and manner approved by the Court. *See* Declaration of Melissa Baldwin ("RG/2 Decl.").

Prior to mailing the Notice Packets, and in order to locate the most recent addresses for Class Members, RG/2 Claims ran the Class data list of 150 names and addresses received from the Defendants through the United States Postal Service's National Change of Address database ("NCOA") and updated the records with any corrected information received. RG/2 Decl, ¶ 6. RG/2 Claims also incorporated any updated addresses for the Class Members received from Class Counsel. *Id.* On February 8, 2019, RG/2 Claims re-sent, via first class mail and email, full Notice packages to Class and Collective members who had not yet filed Claim Forms. *Id.*, at ¶ 12. As of March 15, 2019, 11 Notice Packets have been returned by the United States Postal Service ("USPS") as undeliverable. *Id.*, at ¶ 13. Of the 11 returned Notice Packets, one (1) Notice Packet included a forwarding address provided by the USPS, and a new Notice Packet was promptly mailed to the Class Member. *Id.* For the remaining 10 returned Notice Packets, RG/2 Claims performed extensive skip-trace procedures, including requesting social security numbers from the Defendants, and was able to locate updated addresses for all 10 Class Members. Again, new Notice Packets were promptly mailed to the Class Members. *Id.* Therefore, 100% of the Notice Packets mailed (and not having been returned) may be presumed as having been successfully delivered to the potential Class Members. *Id.*

In addition to mailed and emailed Notice, the Notice was published on the publicly accessible case settlement website maintained by the Settlement Administrator throughout the notice and claim period.[5] RG/2 Decl., ¶ 10. That website (i) provided a brief summary of the case and notice process; (ii) provided a link to download the Notice and Claim form; (iii) attached

---

[5] https://www.rg2claims.com/winkinglizard.html

6

pertinent Court Documents including the Settlement Agreement, Order preliminarily approving settlement, and Order rescheduling the final approval hearing; (iv) provided answers to common questions on its "FAQs" page; and (v) included contact information for any questions. *Id.*

The Court-ordered deadline for timely filed objections or requests for exclusion was February 25, 2019. There were no requests for exclusion from any Class Member, and there were no objections from any Class Member. *Id.*, at ¶¶ 17-18. Also, on December 21, 2018, Defendants served all required government officials with the notices required by the Class Action Fairness Act ("CAFA"). The 90 day period for those CAFA notice recipients to lodge objections to the settlement concludes on March 21, 2019. To date, there have been no objections from any government officials in response to CAFA notices, and the parties do not anticipate that any such objections will be lodged in this case. Head Decl, ¶ 14.

Plaintiffs have also filed under seal the proposed schedule of individual payments to the Class Members on the initial settlement class list, calculated according to the method described in the Parties' Settlement Agreement. *See* Exhibit A to Plaintiff's Sealed Submission of the Declaration of C. Andrew Head ("Sealed Submission") [ECF 18]. Under the Settlement Agreement, the Net Settlement Fund was divided into Individual Payments, which were calculated separately for the FLSA and OMFWSA claims.

As of March 15, 2019, RG/2 Claims has received 120 timely-postmarked, or otherwise timely submitted, FLSA Collective Claim Forms, representing acceptance of the offered FLSA payments by 80% of the total 150 individuals. RG/2 Decl., ¶ 14. Additionally, 15 State Settlement Class Members did not file Claim Forms to claim their additional FLSA payments, therefore they are only eligible to receive their State Class payment. *Id.*

## IV. THE COURT SHOULD GRANT FINAL APPROVAL OF THIS SETTLEMENT

### A. Approval Standard for FLSA Settlements

A district court should approve a FLSA collective action settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a bona fide dispute between the parties. *Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *2

(N.D. Ohio May 4, 2018) (*citing, inter alia, Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982)). In reviewing the settlement of a plaintiff's FLSA claims, the district court must "'ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.'" *Evans v. Myers Controlled Power, LLC*, No. 5:18-cv-2710, 2019 U.S. Dist. LEXIS 33942, at *3 (N.D. Ohio Mar. 4, 2019) (citations omitted). The existence of a bona fide dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *Id.* (citations omitted). Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicium of fairness. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.

B. Approval Standard for Rule 23(e) Class Action Settlement Approval

A district court must find a settlement to be "fair, reasonable, and adequate" for it to be approved. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (*quoting* Fed. R. Civ. P. 23(e)(1)(C)). The district court considers seven factors in making this finding:

> (1) the risk of fraud or collusion;
> (2) the complexity, expense and likely duration of the litigation;
> (3) the amount of discovery engaged in by the parties;
> (4) the likelihood of success on the merits;
> (5) the opinions of class counsel and class representatives;
> (6) the reaction of absent class members; and
> (7) the public interest.

*UAW*, 497 F.3d at 631. The district court has "wide discretion" to weigh these factors. *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992). While these factors are helpful in guiding the analysis, the "fairness of each settlement turns in large part on the bona fides of the parties' legal dispute," that is, whether there are real issues and risks in the case that would lead each party to opt toward settlement. *UAW*, 497 F.3d at 631.

These factors are considered in light of "federal law favor[ing the] settlement of complex class actions." *Todd S. Elwert, Inc. v. All. Healthcare Servs.*, No. 5:15-cv-2223, 2018 U.S. Dist. LEXIS 162060, at *5 (N.D. Ohio Sep. 21, 2018) (*quoting Preston v. Craig Transp. Co.*, No. 3:14 CV 1410, 2015 U.S. Dist. LEXIS 183019, 2015 WL 12766499, at *2 (N.D. Ohio 2015)).

8

In addition, the Court must ensure that the settlement notice process provides "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The Court previously approved the content of the Notices and Claim forms. The Notices provided potential Settlement Class Members information about the terms of the settlement, informed them about the allocation of attorney fees and costs and intent to seek approval for service payments and Settlement Administrator fees, and explained their right to object or exclude themselves from settlement. The Notices also provided potential members information regarding the date, time, and place of the Final Approval Hearing, as well as contact information for the Settlement Administrator and Class Counsel. And there can be no question that by delivering the Court-approved Notices via both direct U.S. Mail and by email (which included a click link to electronically sign and submit a Claim Form directly via the Settlement Administrator's online portal), this settlement involved "the best notice that is practicable" by providing notice "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 U.S. Dist. LEXIS 122297, at *9 (S.D. Ohio Sep. 9, 2016) (finding notice providing similar information sent by U.S. Mail and by email satisfied "best notice" requirements) (*quoting UAW*, 497 F.3d 615, 629-30).

C. The Court Properly Certified The Settlement Classes

Following preliminary approval, the class action is presumed to be reasonable, and "an objecting class member must overcome a heavy burden to prove that the settlement is unreasonable." *Todd S. Elwert*, 2018 U.S. Dist. LEXIS 162060, at *5 (citations omitted). There were no objections to this settlement by any class member or government official in response to CAFA notices.

For the reasons set forth in the Parties' motion for preliminary approval, and as ordered by the Court in granting preliminary approval, the Settlement Class was properly certified due to the Parties' satisfactory demonstration of numerosity, commonality, typicality, adequacy of representation by Class Counsel, predominance, and superiority.

9

### D. The Settlement Far Exceeds The Requirements for Final Approval.

#### 1. *The Settlement Resolved Bona Fide Disputes in Adversarial Litigation.*

While the Court reviews a settlement for fairness based on the bona fides of the parties' legal dispute, this does not mean that the court should "decide whether one side is right or even whether one side has the better of these arguments. . . . The question is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632. Defendants denied the material allegations of Plaintiffs' claims and any violation of the FLSA or OMWFSA, and they vigorously defended their position throughout the litigation and settlement negotiations. *See, e.g., Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *3 (N.D. Ohio May 4, 2018).

The parties had, among others, four interwoven legal-factual disputes: (1) whether the primary job duties of AKMs and MITs were similar enough to satisfy the standards for final collective certification and class certification; (2) whether the decision to classify AKMs and MITs as exempt was proper or improper; (3) whether Defendants made its classification decisions in good faith (sufficient to deny liquidated damages) or willfully (required for the FLSA's statute of limitations to extend from two years to three years); and (4) even if liability is established, what the proper measurement of damages is in an overtime exemption case alleging misclassification – i.e., whether there is a time and half or a half time multiplier, and whether that multiplier applies to a regular rate determined by dividing weekly pay by all hours worked (as Defendants contend) or instead that multiplier applies to the rate paid for non-overtime hours worked (weekly salary divided by 40 hours).[6] If this case was not resolved by settlement and continued to be litigated

---

[6] *See, e.g., Wilson v. PrimeSource Health Care of Ohio, Inc.*, No. 1:16-CV-1298, 2017 U.S. Dist. LEXIS 103548, at *31 (N.D. Ohio July 5, 2017) (collecting cases regarding contested method of calculating unpaid overtime damages in exemption misclassification cases, holding that a jury must decide the number of hours plaintiff's salary was meant to compensate in order to determine regular rate for overtime pay).

through summary judgment motions,[7] decertification/class action certification motions,[8] trial,[9] and appeals,[10] there is no guarantee Plaintiffs would have prevailed on these disputes. Thus, the settlement resolves a "bona fide dispute" in a litigated civil action.

Finally, the Parties reached settlement only with the assistance of an experienced mediator, Jerome Weiss, and only after months of protracted and continued negotiations after the Parties' in-person mediation did not result in a settlement. "[T]he participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties." *See Hainey v. Parrot*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007). The Settlement here was the product of contested litigation.

### 2. *The Settlement Was Not the Product of Fraud or Collusion*

There is a "presumption that the class representatives and counsel handled their responsibilities with the independent vigor that the adversarial process demands." *UAW*, 497 F.3d at 628; *see also Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010)

---

[7] *See, e.g., Phillips v. Tacala, LLC*, 883 F. Supp. 2d 1138 (N.D. Ala. 2012) (granting defendant's summary judgment motion, finding no dispute of material fact precluding conclusion that plaintiff, a restaurant Assistant General Manager, was employed in a bona fide executive capacity).

[8] *See, e.g., Creely v. Hcr ManorCare, Inc.*, 920 F. Supp. 2d 846 (N.D. Ohio 2013) (decertifying FLSA collective action); *Cornell v. World Wide Bus. Servs. Corp.*, No. 2:14-cv-27, 2015 U.S. Dist. LEXIS 148191 (S.D. Ohio Nov. 2, 2015) (decertifying collective because of "disparate factual and employment settings" of the individual opt-in plaintiffs); *see also Stevens v. HMSHost Corp.*, No. 10 CV 3571 (ILG) (VVP), 2014 U.S. Dist. LEXIS 119653 (E.D.N.Y. Aug. 26, 2014) (decertifying food service assistant manager FLSA collective action); *Hernandez v. Fresh Diet, Inc.*, No. 12-cv-4339 (ALC) (JLC), 2014 U.S. Dist. LEXIS 139069 (S.D.N.Y. Sept. 29, 2014) (decertifying assistant manager FLSA collective action); *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567 (E.D. La. 2008) (decertifying retail store manager collective action).

[9] *See, e.g., Little v. Belle Tire Distribs.*, No. 13-10311, 2015 U.S. Dist. LEXIS 142227 (E.D. Mich. Oct. 20, 2015) (after trial on liability, court rules First Assistant Store Managers were exempt under the FLSA's executive exemption).

[10] *See, e.g., Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496 (6th Cir. 2007) (affirming district court's summary judgment finding that a convenience store manager's duties met the executive exemption); *Frye v. Baptist Mem'l Hosp., Inc.*, 507 F. App'x 506 (6th Cir. 2012) (affirming district court's award of defendant's costs against plaintiffs after decertification of FLSA collective action).

11

("Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary.").

There was no fraud or collusion in reaching the Settlement. Settlement negotiations were extensive, conducted fairly by experienced counsel, and at arm's-length with the assistance of an exceedingly experienced mediator, and the settlement only occurred after the exchange and analysis of ample data including full time and payroll data for all potential class members, policy documents and handbooks, AKM log notes and staff journal excerpts, performance review documents, job postings, and all other information and data necessary to make an informed evaluation of the strengths and weaknesses of each party's claims and defenses. Head Decl., ¶ 11; *see In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 351 (N.D. Ohio 2001) ("[W]hen a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair.") (*citing Williams v. Vukovich*, 720 F.2d 909, 923 (6th Cir. 1983)). There can be no doubt that in reaching this substantial Settlement, there has not been, and there could not be, been, the slightest suggestion of collusion – indeed, no one has objected to the Settlement or otherwise "made the case that the agreement is a product of collusion." *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 351 (6th Cir. 2009) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983))).

3. *The Complexity, Expense, and Likely Duration of Litigation Supports Approval*

"FLSA claims typically involve complex mixed questions of fact and law." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981). The FLSA and state wage and hour law claims and defenses are complex (*see* Section IV(D)(1), supra); litigating those disputed claims, defenses, and procedural issues would be both difficult and time-consuming. Recovery by any other means would have required years of additional litigation, trial and appeals of this action, along with the potential for decertification or class certification denial resulting in separately filed actions each involving their own summary judgment motions, trials, and appeals. *See United States v. Glens Falls Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys

12

and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial").

### 4. *The Parties Conducted Sufficient Discovery to Determine Litigation Risks*

"In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *Mitchell v. Indep. Home Care, Inc.*, No. 2:17-cv-717, 2019 U.S. Dist. LEXIS 26464, at *10-11 (S.D. Ohio Feb. 20, 2019) (citations omitted). In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id.*

In this case, the Parties engaged in extensive informal discovery before engaging in mediation and settlement negotiations. Plaintiff and Class Counsel conducted extensive investigations into the facts before and during the prosecution of this case, which investigations included multiple meetings and conferences with the Plaintiff and opt-in Plaintiff; analysis of payroll and other documents produced to Class Counsel by its clients; analysis of complete payroll records and "point of sale" system-logged weekly hours for the entire class, as well as other bonus, handbook, and other employment policy documents produced by Defendants; individualized damages calculations; analysis of Defendants' legal positions; investigation into the viability of class and collective action treatment; and extensive analysis of potential class-wide damages. Head Decl., ¶¶ 11, 33; *see Mitchell*, 2019 U.S. Dist. LEXIS 26464, at *10-11 (finding record of such investigation "demonstrates that both parties have been afforded an adequate opportunity to conduct sufficient discovery to be fully appraised of the legal and factual issues presented as well as the strengths and weaknesses of their cases[; b]oth sides made well-informed decisions to enter into the Settlement[; and t]his factor weighs in favor of approving the proposed Settlement.")

### 5. *Likelihood of Success on the Merits Supports Final Approval*

"The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *In re Gen. Tire & Rubber Co. Sec. Litig.,* 726 F.2d 1075, 1086

13

(6th Cir. 1984). From Plaintiff's perspective, there were risks in nearly every aspect of the case, as summarized above in Section IV(D)(1).

First, there were risks as to Rule 23 certification of the OMWFSA state law class action, and risks of decertification of the FLSA collective action. The loss of the collective and class mechanisms would have (i) eliminated the Plaintiff's opportunity to spread the substantial litigation expenses needed to take the case to trial across the collective and class members, and (ii) negatively affected the substantial bargaining power Plaintiff would have to bring the case to final settlement and to curtail additional litigation. Thus, Plaintiffs could have prevailed on their individual cases, but lost the class/collective certification battle, which would have had a series of direct negative consequences for them and the class of individuals slated to receive the benefits of this settlement - such as members of any decertified collective, for example, deciding not to pursue their individual claims after decertification.

Second, a trial on the merits would involve significant risks as to liability. The circumstances in *Thomas v. Speedway SuperAmerica, LLC*, illustrate the challenges of pursuing claims under the executive exemption. 506 F.3d 496, 504-09 (6th Cir. 2007). In that case, the district court granted summary judgment to the defendant on the grounds that plaintiff, a convenience store manager, was properly classified as exempt under the bona fide executive exemption, and the Sixth Circuit affirmed, despite the plaintiff's compelling argument that managers performed extensive non-managerial tasks.  *Thomas*, 506 F.3d at 504-09. Other employers in this Circuit have similarly succeeded in establishing their exemption defenses after protracted litigation. *See Henry v. Quicken Loans, Inc.*, 698 F.3d 897, 902 (6th Cir. 2012) (after eight years of litigation, affirming jury verdict that mortgage bankers were properly classified as exempt from overtime under the FLSA); *Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640, 650-51 (6th Cir. 2013) (affirming exempt status for special investigators following bench trial and five years of litigation). Although Plaintiff believes these cases are distinguishable from the facts and legal arguments at issue in this case, the potential litigation risk is undeniable.

14

Third, as summarized in Section IV(D)(1) above, even if liability could be established, uncertainties exist as to the fact and amount of damages. Damages – and the method of calculating them both as a matter of fact and also as a matter of law – would have been hotly disputed as they were during negotiations, and if Defendants' preferred half-time calculation method was accepted, the damages value would be reduced to approximately one-third of Defendants' damages exposure under Plaintiff's preferred calculation method. In addition, at trial, Plaintiff would have to prove willfulness in order to obtain a third year of liability for damages, and establish that the Class Members worked over 40 hours a week while overcoming Defendants' defenses that "point of sale" time entry records overstated hours by including non-compensable time such as full meal breaks while logged in to the "point of sale" system.

Courts have recognized in exemption misclassification cases similar to this one, "[i]t is undisputed that copious risks abound with respect to maintaining this action and establishing liability." *Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 U.S. Dist. LEXIS 2658, at *38 (M.D. Pa. Jan. 7, 2013).  So too in this case.

Here, as set forth in Class Counsel's Declarations, Plaintiff and Class Counsel contend that this settlement is an outstanding result for the Class Members. (Head Decl., ¶ 12)[11] But even the possibility that the class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Invest.*, 962 F.2d at 1206 (quotation omitted). Where a proposed settlement provides for relief now, rather than some years down the road, it is

---

[11] This settlement involves a per-person net recovery that compares favorably to other restaurant "Assistant Manager" exemption misclassification settlements (particularly when accounting for the fact that the MIT Class Members only worked a limited number of weeks in that training position). For example, the Department of Labor, after investigating Einstein Brothers Bagels for its classification of Assistant Managers as exempt, reached a settlement for payment of $495,930.03 in back overtime wages to 424 Assistant Managers in 27 states nationwide. *See* DOL News Release (https://www.dol.gov/newsroom/releases/esa/esa20020925); *see also Castillo v. Noodles & Co.*, No. 16-cv-03036, 2016 U.S. Dist. LEXIS 178977 (N.D. Ill. Dec. 23, 2016) (approving settlement of restaurant assistant manager exemption misclassification claims with an average net settlement award of $1,329.62).

15

proper for the parties "to take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974).

6. *The Opinions of Class Counsel and Parties Support Final Approval*

The Parties were represented by competent, experienced counsel with extensive experience in wage and hour class and collective action litigation. Head Decl., ¶¶ 3-10. Over decades of litigation experience, Class Counsel has prevailed – and, unfortunately on occasion, suffered defeat – in litigating many such cases on behalf of their clients, putting them in a strong position to weigh the strengths and weaknesses of the claims in this case. Id., at ¶¶ 3-9. Counsel for the parties, having thoroughly vetted the legal, factual, and evidentiary issues in this case, recommend approval of this settlement. "The Court gives great weight to the recommendation of experienced counsel for the parties in evaluating the adequacy of the settlement." *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 U.S. Dist. LEXIS 98763, at *49-50 (N.D. Ohio Sep. 1, 2011).

The Parties[12] and their respective counsel agree that this settlement is fair, reasonable, and deserving of final approval. The allocation method fairly accounts for individual damages by basing settlement allocation on weeks worked in covered AKM and MIT positions. *Jackson v. Trubridge, Inc.*, No. 5:16-cv-00223, 2017 U.S. Dist. LEXIS 193782, at *4 (N.D. Ohio Jan. 26, 2017) ("The proposed method of allocating the settlement payments-according to recipients' respective workweeks during the applicable period-is reasonable and fair to all."). Weeks worked within the FLSA's default two year statute of limitations are weighted higher for fund allocation purposes than weeks worked within the third year for which there could be no recovery if Plaintiff proved FLSA liability but failed to prove a "willful" violation. *See, e.g., Torres v. Washrite Plus, Inc.*, No. PJM 15-2982, 2016 U.S. Dist. LEXIS 100046, at *10 (D. Md. Aug. 1, 2016) (approving FLSA settlement of exemption misclassification overtime claim that applied lower valuation to FLSA claims during third year period than to default two year period). The allocation method also

---

[12] *Gascho v. Glob. Fitness Holdings, LLC*, No. 2:11-cv-436, 2014 U.S. Dist. LEXIS 46846, at *54 (S.D. Ohio Apr. 4, 2014) ("Not insignificantly, the Class Representatives have also approved the Settlement Agreement.")

16

fairly accounts for the higher value of a FLSA claim (unpaid wages plus an equal amount as liquidated damages, possible three year limitations period) compared to an identical claim under the OMWFSA (unpaid wages but no liquidated damages, maximum two year limitations period), by offering a higher amount as a FLSA Payment in exchange for accepting the FLSA Release by filing a claim form, and a lower amount for accepting only the State Law Release of the OMWFSA claim. *See, e.g., Chance v. E. I. du Pont de Nemours & Co.*, No. 1:16-CV-00376-MAC, 2019 U.S. Dist. LEXIS 35638 (E.D. Tex. Mar. 6, 2019) (granting final approval of settlement agreement [ECF 130-1] for hybrid FLSA collective action/Rule 23 state law settlement purpose multi-state class actions; 86% of net settlement fund allocated to FLSA opt-in fund, remaining 14% allocated to opt-out Rule 23 class action settlement fund).

7. *The Positive Reaction of Class Members Supports Final Approval*

There were no objections or requests for exclusion filed within the Court-ordered objection and opt-out period that closed on February 25, 2019. RG/2 Decl. ¶¶ 17-18. In fact, Class Members have shown overwhelming approval of the Settlement. The named Plaintiff and original opt-in Plaintiff receive the benefits of the settlement without having to fill out a claim form. The OMWFSA state law class members receive their allocated State Law Payments without having to fill out a claim form. And, for the putative FLSA Collective settlement class members who were offered a FLSA Payment if they submit a form to join the litigation and participate in the settlement, 80% percent did so. RG/2 Decl. ¶ 14. This is an excellent claims rate and compares quite favorably to other class action settlements involving claim forms. *See, e.g., Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 289-90 (6th Cir. 2016), *cert. denied sub nom. Blackman vs. Gascho*, U.S., No. 16-364 (Feb. 21, 2017), and *cert. denied sub nom Zik v. Gascho*, U.S., No. 16-383 (Feb. 21, 2017) (noting testimony of a settlement administrator that in its experience with over 3,000 settlements, 99% of which were claims-made settlements, the median response rate is 5 to 8 percent); 2 McLaughlin on Class Actions § 6:24 (11th ed.) ("Claims-made settlements typically have a participation rate in the 10-15 percent range.") (citing cases).

Moreover, as noted, no government official recipient of CAFA settlement notices objected or voiced any disapproval whatsoever of the Settlement. Head Decl, ¶ 14; *see*, *e.g.*, *Hall v. Bank of Am., N.A.*, No. 1:12-CV-22700-FAM, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) ("[T]he Court considers the reaction of the class, as well as the reaction of the various state attorney generals and regulators, to the proposed settlement to be an important indicator as to its reasonableness and fairness."). This factor supports final approval.

8. *Public Interest and CAFA Compliance*

"Class actions are meant to serve the public interest by providing an incentive for lawyers and class representatives to litigate on behalf of a group of people whose injury is legitimate and meaningful, but whose individual damages are not substantial enough to make litigation on an individual basis worthwhile." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 782 (N.D. Ohio 2010). In filing this case, Plaintiff and Class Counsel "took on a difficult case that an individual Class Member would almost certainly never file on their own" and "obtained recovery on a class-wide basis for an alleged injury that, but for this litigation, would almost certainly have gone uncompensated." *Id.* As a result, the substantial judicial resources that would need to be used to resolve this dispute can now be redirected toward other public ends. Moreover, it is in the public interest that 135 individuals who have lived and worked in the state of Ohio will receive a meaningful, monetary award and that the parties, including Defendants consisting entirely of Ohio corporations, will not face the risks and expenses inherent in continued litigation. In addition, the settlement brings clarity and finality to Defendants regarding this litigation.

Under CAFA, "[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)]." 28 U.S.C. § 1715(d). Defendants served the CAFA notices on December 21, 2018, and the 90 day period for those CAFA notice recipients to lodge objections to the settlement will have concluded on March 21, 2019, prior to the Final Approval Hearing on March 26, 2019. This constitutes proper

18

notice under CAFA. *See, e.g., Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 973 (E.D. Cal. 2012).

## **CONCLUSION**

For the reasons stated above and as recognized by the Court in granting preliminary approval of this settlement, the Parties respectfully request that the Court enter the Final Order entering stipulated judgment filed with this joint motion for final approval. Entry of the Final Order entering stipulated judgment is an essential term of the Settlement Agreement (¶¶ 8, 16) and necessary to the settlement's implementation.

Respectfully submitted,

| | |
|---|---|
| */s/ C. Andrew Head* | */s/ Robert J. Bowes, III* |
| C. Andrew Head | Vincent J. Tersigni (0040222) |
| Bethany A. Hilbert | Robert J. Bowes, III (0092871) |
| Head Law Firm, LLC | Michael J. Kozimor (0092376) |
| 4422 N Ravenswood Ave | Jackson Lewis, P.C. |
| Chicago, IL  60640 | Park Center Plaza I, Suite 400 |
| (404) 924-4151; (404) 796-7338  (Fax) | Cleveland, OH  44131 |
| ahead@headlawfirm.com | (216) 750-0404 |
| bhilbert@headlawfirm.com | (216) 750-0826  (Fax) |
| | Vincent.Tersigni@JacksonLewis.com |
| Lori M. Griffin (0085241) | Robert.Bowes@JacksonLewis.com |
| Chastity L. Christy (0076977) | Michael.Kozimor@JacksonLewis.com |
| Anthony J. Lazzaro (0077962) | |
| The Lazzaro Law Firm, LLC | *Attorneys for Defendants* |
| 920 Rockefeller Building | |
| 614 W. Superior Avenue | |
| Cleveland, OH  44113 | |
| (216) 696-5000; (216) 696-7005 (Fax) | |
| chastity@lazzarolawfirm.com | |
| anthony@lazzarolawfirm.com | |
| lori@lazzarolawfirm.com | |

*Attorneys for Plaintiffs and the Class/Collective*

## **CERTIFICATE OF SERVICE**

This is to certify that the foregoing has been electronically filed with the United States District Court for the Northern District of Ohio on this 15 day of March, 2019. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Bethany A. Hilbert*
Bethany A. Hilbert

*One of the Attorneys for Plaintiffs*
