IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Samuel Barnes**, on behalf of himself and all others similarly situated,<br><br>                  **Plaintiff,**<br>  v.<br><br>**Winking Lizard, Inc.**, *et al.,*<br><br>                  **Defendants.** | Case No. 1:18CV952<br><br>JUDGE PATRICIA A. GAUGHAN<br><br>**ORDER APPROVING CLASS ACTION SETTLEMENT AGREEMENT AND ENTERING STIPULATED JUDGMENT** |

       On April 25, 2018, named Plaintiff Samuel Barnes filed this civil action against Defendant Winking Lizard, Inc. and other related entities on behalf of himself and all other similarly situated Assistant Kitchen Managers ("AKMs") and Manager-in-Training employees ("MIT") to recover overtime pay that they alleged Defendant had withheld in violation of the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act ("OMFWSA") based on alleged misclassification as exempt from the overtime laws.

       On June 21, 2018, at the request of the parties, the Court continued the case management conference until September 21, 2018 so that the parties could engage in mediation. The parties eventually reached a settlement and moved for preliminary approval. The Court entered an Order on December 6, 2018 (Doc. 16), preliminarily approving the settlement, approving the proposed notice and claim forms and notice procedures, appointing Head Law Firm, LLC as Class Counsel, and conditionally certifying the FLSA Collective and State Law Class. The Court set a final approval hearing for March 26, 2019.

       The Settlement Administrator issued the settlement Notice and Claim forms approved by the Court to the 150 total class and collective settlement members, of whom 99 were absent class

1

members of the OMFWSA state law class. The Settlement Administrator performed skip tracing of notices returned as undeliverable, reissued notices to updated addresses, and reports that 100% of the notice packets mailed may be presumed to have been successfully delivered. The Settlement Administrator also maintained a case settlement website publishing the notices, claim form, relevant court documents, contact information, and other information regarding the settlement.

There were no requests for exclusion or objections filed by any Class Member. Defendants issued the notices required under the Class Action Fairness Act ("CAFA"), and there were no objections to the settlement by any notified government officials.

The terms of the settlement are memorialized in the parties' Settlement Agreement. (Doc. 13-2). Without conceding the validity of Plaintiffs' claims and without admitting liability, Defendant agreed to create a total settlement fund of $1,125,000 ("Settlement Fund") to resolve the litigation. The net amount of the Settlement Fund, after payment of any Court-approved service payments, attorney's fees and costs, and Settlement Administrator fees, was apportioned based on a formula that allocated FLSA Fund amounts and State Law Fund amounts, and each individual's settlement share was determined based on weeks worked in covered positions, weighted higher for the two year period than for the third year period that would only be available under the FLSA upon proof of a willful violation. The FLSA Fund amounts were offered to Class Members by the notice process, and only those Class Members who executed Claim Forms accepting the FLSA payments and opting-in to this lawsuit would be bound by the limited FLSA release set forth in the Settlement Agreement. The Class Member releases were limited to the specified wage and hour claims, and Class Members were not required to provide a general release of all claims.

2

On March 15, 2019, the parties filed their Joint Motion for Final Approval of Class Action Settlement Agreement, With Final Order Entering Stipulated Judgment ("Final Approval Motion"), and Plaintiffs filed their Unopposed Motion for Approval of Service Payments, Attorney's Fees, and Costs from Class Action Settlement ("Fee Approval Motion"). The Court held a fairness hearing on March 26, 2019.

## I.     CLASS AND COLLECTIVE ACTION SETTLEMENT

Before a district court approves a FLSA collective action and Rule 23 class action settlement, it must find that the settlement is fair, reasonable, and adequate. *See, e.g., Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *2 (N.D. Ohio May 4, 2018) (*citing, inter alia, Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982)) (FLSA settlement approval standard); *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (*quoting* Fed. R. Civ. P. 23(e)(1)(C)) (Rule 23 settlement approval standard).

The Court considers seven factors in making this finding:

> (1) the risk of fraud or collusion;
> (2) the complexity, expense and likely duration of the litigation;
> (3) the amount of discovery engaged in by the parties;
> (4) the likelihood of success on the merits;
> (5) the opinions of class counsel and class representatives;
> (6) the reaction of absent class members; and
> (7) the public interest.

*UAW*, 497 F.3d at 631. The Court has "wide discretion" to weigh these factors. *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992). While these factors are helpful in guiding the analysis, the "fairness of each settlement turns in large part on the bona fides of the parties' legal dispute," that is, whether there are real issues and risks in the case that would lead each party to opt toward settlement. *UAW*, 497 F.3d at 631.

As set forth below, the settlement clearly meets the standard for final settlement approval.

**A. The Risk of Fraud or Collusion**

It is beyond dispute that the settlement was the result of arm's-length negotiations, free of collusion or fraud, conducted by experienced counsel for all parties, and achieved through a formal mediation conducted by a neutral mediator and the negotiations that followed with the mediator's involvement. *See, e.g., Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 351 (6th Cir. 2009) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983))) (finding no doubt that settlement was not the product of collusion, noting that no class member objected to the Settlement or otherwise "made the case that the agreement is a product of collusion."); *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 351 (N.D. Ohio 2001) ("[W]hen a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair."); *Hainey v. Parrot*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) ("[T]he participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties.").

Counsel for the parties vigorously litigated this case and advocated for their respective clients before and during the full-day mediation session and the months of prolonged negotiations that followed, ultimately resulting in this settlement.

### B. The Complexity, Expense, and Likely Duration of the Litigation

This factor strongly favors approval because, absent settlement, continued litigation would require additional discovery and motion practice concerning highly disputed issues, including (1) whether the primary job duties of AKMs and MITs were similar enough to satisfy the standards for final collective certification and class certification; (2) whether the decision to classify AKMs and MITs as exempt was proper or improper; (3) whether Defendants made its classification decisions in good faith (sufficient to deny liquidated damages) or willfully (required for the FLSA's statute of limitations to extend from two years to three years); and (4) even if liability is established, proof and calculation of damages. If this case was not resolved by settlement and

4

continued to be litigated through summary judgment motions, decertification/class action certification motions, trial, and possible appeals, there is no guarantee Plaintiffs would have prevailed on these disputes.

### C. The Amount of Discovery Engaged in By the Parties

"In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *Mitchell v. Indep. Home Care, Inc.*, No. 2:17-cv-717, 2019 U.S. Dist. LEXIS 26464, at *10-11 (S.D. Ohio Feb. 20, 2019) (citations omitted). In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id.*

In this case, the Parties engaged in extensive informal discovery before engaging in mediation and settlement negotiations. Plaintiff and Class Counsel conducted extensive investigations into the facts before and during the prosecution of this case, which investigations included multiple meetings and conferences with the Plaintiff and opt-in Plaintiff; analysis of payroll and other documents produced to Class Counsel by its clients; analysis of complete payroll records and "point of sale" system-logged weekly hours for the entire class, as well as other bonus, handbook, and other employment policy documents produced by Defendants; individualized damages calculations; analysis of Defendants' legal positions; investigation into the viability of class and collective action treatment; and extensive analysis of potential class-wide damages. *See Mitchell*, 2019 U.S. Dist. LEXIS 26464, at *10-11 (finding record of such investigation "demonstrates that both parties have been afforded an adequate opportunity to conduct sufficient discovery to be fully appraised of the legal and factual issues presented as well as the strengths

and weaknesses of their cases[; b]oth sides made well-informed decisions to enter into the Settlement[; and t]his factor weighs in favor of approving the proposed Settlement.")

### D. The Likelihood of Success on the Merits

The settlement provides relief to class members and eliminates the risks that the parties would otherwise bear if this litigation were to continue on for more years. As discussed above, absent settlement, the parties would have engaged in additional discovery (including written discovery and depositions), and motion practice (class decertification, FLSA collective decertification, dispositive motions on merits and damages issues). While Plaintiffs continue to believe that they would ultimately prevail on these issues, they recognize the inherent risk of litigation and trial. *See, e.g., Foster v. Nationwide Mut. Ins. Co.,* 710 F.3d 640 (6th Cir. 2013) (affirming bench trial verdict that special investigators were properly classified as exempt from the overtime pay requirements of the FLSA)*; Henry v. Quicken Loans, Inc.*, 698 F.3d 897 (6th Cir. 2012) (affirming a jury verdict, reached after eight years of litigation, that mortgage bankers were properly classified as exempt from the overtime pay requirements of the FLSA); *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 504-09 (6th Cir. 2007) (affirming summary judgment to defendant on executive exemption for convenience store manager). By agreeing to the settlement, these risks are eliminated and participating class members are guaranteed to receive an excellent recovery now, rather than possibly receiving a recovery years from now (or not receiving any recovery ever).

### E. The Opinions of Class Counsel and Class Representatives

Class Counsel believes that this settlement is fair and reasonable both standing on its own and when viewed against other overtime settlements. The named Plaintiff as class representatives fully supports the settlement and has signed the Settlement Agreement, confirming his support for the Settlement. Accordingly, this factor weighs in favor of final approval.

### F. The Reaction of Absent Class Members

The reaction of the class was overwhelmingly positive and supports approval. Out of 150 Plaintiffs and Ohio class members, none filed objections or requests for exclusion. Further, a total of 130 eligible participants offered FLSA payments – 80% – accepted the terms of the FLSA release by submitting claim forms and opting-in to the law suit in exchange for their offered FLSA payments. This overwhelmingly positive reaction to the settlement supports approval.

### G. The Public Interest

Public policy generally favors settlement of class action lawsuits. *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) (*citing Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 143 (W.D. Ky. 1992)).

"Class actions are meant to serve the public interest by providing an incentive for lawyers and class representatives to litigate on behalf of a group of people whose injury is legitimate and meaningful, but whose individual damages are not substantial enough to make litigation on an individual basis worthwhile." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 782 (N.D. Ohio 2010). In filing this case, Plaintiff and Class Counsel "took on a difficult case that an individual Class Member would almost certainly never file on their own" and "obtained recovery on a class-wide basis for an alleged injury that, but for this litigation, would almost certainly have gone uncompensated." *Id.*

The Settlement provides relief for a substantial number of class members, avoids further litigation in a complex case, and frees the Court's judicial resources. Accordingly, the Court concludes that this factor weighs in favor of approving the proposed Settlement because the public interest is served by resolution of this action.

### H. The Settlement Notice

Finally, the content of the settlement notice, which the Court approved in its Preliminary Approval Order, fully complies with due process. Further, the Settlement Administrator mailed the Court-approved settlement notice to class members consistent with this Court's Preliminary Approval Order. Before mailing the settlement notice, the Settlement Administrator updated the class members' addresses utilizing the National Change of Address Database. All settlement notices returned to the Settlement Administrator as undeliverable were reissued to updated addresses located by the Settlement Administrator, and it can be presumed that 100% of the notices were delivered. As such, the Court finds that the parties have satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, and that the settlement notice here constituted the best notice practicable under the circumstances.

## II.     ATTORNEYS' FEES

### A. The Court Adopts the Percentage Approach

The Settlement Agreement provides for payment of Plaintiffs' attorney's fees and costs in the amount of one third of the Settlement Fund. The Sixth Circuit has approved a court's use of the percentage-of-the-fund method to determine a reasonable attorney's fee from a common fund settlement. *Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993); *see also Lonardo v. Travelers Indemnity Co.*, 706 F. Supp. 2d 766, 790 (N.D. Ohio 2010) (the percentage-of-the-fund method is the "preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share"); *Swigart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450, at * 14-15 (S.D. Ohio July 11, 2014) (adopting the percentage approach as "the most appropriate method for determining reasonable attorneys' fees" in wage and hour cases).

The Court will use the percentage-of-the-fund method to determine the reasonableness of the attorney's fees and cost amount to be paid from this settlement.

### B. *Ramey* Factors

In reviewing the reasonableness of the requested award, the Court considers six factors, known as the *Ramey* factors:

(1) the value of the benefits rendered to the class;
(2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;
(3) whether the services were undertaken on a contingent fee basis;
(4) the value of the services on an hourly basis;
(5) the complexity of the litigation; and
(6) the professional skill and standing of counsel on both sides.

*Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir. 1974) Each of these factors weighs in favor of awarding the requested attorneys' fees.

#### *1. The Value of the Benefit*

Class counsel's work resulted in a settlement of $1,125,000. Further, the settlement provides relatively early relief to class members, and it eliminates the additional risks the parties would otherwise bear if this litigation were to continue. Absent settlement, the parties would have engaged in extensive discovery (including written discovery and multiple depositions), and contested class certification, FLSA collective decertification, and dispositive motions on merits and damages issues. The Court finds that the recovery for the class members by this settlement exceeds the average wage recovery in FLSA cases. *Osman*, 2018 U.S. Dist. LEXIS 78222, at *11-12 (*citing Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 U.S. Dist. LEXIS 20446, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (finding that a recovery of one-third of the owed wages for class members, before deducting attorneys' fees and costs, is "well above" average)). The value of the settlement is also evident in the additional non-monetary benefits achieved.

### *2. Society's Interest in Rewarding the Attorneys*

Society's stake in rewarding attorneys who bring class action wage and hour cases favors the requested award. *Gentrup v. Renovo Servs., LLC*, No. 1:07-cv-430, 2011 U.S. Dist. LEXIS 67887, 2011 WL 2532922, at *4 (S.D. Ohio, June 24, 2011) ("[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

### *3. Value of the Services Rendered, and Contingent Fee Basis*

Class Counsel provided representation on a purely contingency fee basis, advancing all litigation costs and receiving no payment unless until there was a recovery, and should be compensated for that risk. *Lonardo v. Travelers Indemnity Co.*, 706 F. Supp. 2d 766, 796 (N.D. Ohio 2010); *see also Crosby v. Bowarter Inc. Ret. Plan*, 262 F. Supp. 2d 804, 814 (W.D. Mich. 2003) ("contingency serves to justify the higher fee").

Moreover, while the value of the services rendered would support the 40% contingency fee percentage before additional reimbursement of costs provided in Class Counsel's fee agreement with Plaintiff,[1] Class Counsel has agreed to accept a reduced percentage (33 1/3%) of the common fund for combined attorney's fees and advanced costs. *See, e.g., Coach, Inc. v. Goodfellow*, No. 2:10-cv-02410-V, 2012 U.S. Dist. LEXIS 192496, at *9 (W.D. Tenn. May 22, 2012) ("the fee seems reasonable considering that Coach states that the fees requested in this motion are less than the amount that their counsel would receive under the parties' contingency agreement.")

---

[1] Plaintiff's engagement agreement provides for contingency fees at the higher of 40% of total recovery, actual lodestar, or awarded lodestar, in addition to reimbursement of advanced costs and expenses from the recovery that is similarly contingent on the outcome. Head Decl., ¶ 37. "The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case." *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) (citations omitted).

10

The Court is not required to conduct a lodestar cross-check of the percentage of the fund fee award.[2] Nonetheless, Class Counsel provided a summary of hours billed and hourly rates. The Court recognizes that Class Counsel is highly skilled and recognized for experience and expertise in wage and hour litigation involving hospitality and retail manager overtime claims, but need not resolve whether to apply local market rates from this district or higher out of town specialist rates because the attorney's fee amount of one third of the settlement fund is reasonable in this case and is well within the range of multipliers approved by Ohio district courts in similar class and collective actions. *See, e.g., Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386-WHR, 2018 U.S. Dist. LEXIS 179474, at *14-15 (S.D. Ohio Oct. 17, 2018) (approving fees under percentage of the fund method representing 2.57 multiplier).

### 4. Complexity of the Litigation

Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming. *Swigart*, 2014 U.S. Dist. LEXIS 94450, at *18 (*citingBeckman v. KeyBank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013)). This is particularly true here, where Plaintiffs alleged overtime claims under the FLSA, and under the state laws of Ohio. Resolving the procedural issues, the merits, and damages would have been risky, costly, and time consuming. Accordingly, the litigation was difficult and complex, and this factor weighs in favor of awarding the requested fees.

### 5. The Professional Skill and Standing of Counsel

The professional skill and standing of counsel on both sides is substantial. As discussed in the Declaration of C. Andrew Head, all Class Counsel are highly qualified and highly

---

[2] "Performing a cross-check of the attorney-fee request using Class Counsel's lodestar is optional." *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 U.S. Dist. LEXIS 122297, at *20-21 (S.D. Ohio Sep. 9, 2016); *see also Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 U.S. Dist. LEXIS 170579, at *16 (S.D. Ohio Oct. 3, 2018) (lodestar cross-check of percentage of the fund fee award is "unnecessary").

experienced, and they all have substantial credentials in federal courts, and class and collective action litigation. The lawyers representing Defendants have extensive experience in this area as well. Accordingly, this factor strongly supports approval of the requested fee award.

### *C. Comparison to Attorneys' Fees in Similar Cases*

"One-third of the common fund is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'" *Osman*, 2018 U.S. Dist. LEXIS 78222, at *6 (citations omitted); *see also Swigart,* 2014 U.S. Dist. LEXIS 94450, at *19 ("An award of 33% of the total settlement fund" – before additional payment for expenses – "is well within the range of fees requested in class and collective actions in Ohio federal district courts. [Cit.]; *Kritzer*, 2012 U.S. Dist. LEXIS 74994, 2012 WL 1945144, at *9-10 (awarding attorney's fees and costs up to $235,000 out of a settlement of $455,000 (52% of total recovery) in a hybrid FLSA collective and Ohio class action for unpaid overtime).")

## III. SERVICE PAYMENTS

The Settlement Agreement provides for service payments to the Representative Plaintiff in the amount of $7,500 and the original opt-in Plaintiff in the amount of $1,000. Courts may make separate awards to class representatives in recognition of their risks taken, time expended and benefits to the class. "Numerous courts have authorized incentive awards [as] efficacious ways of encouraging member of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson,* 322 F.3d 895, 897 (6th Cir. 2003); *accord Osman*, 2018 U.S. Dist. LEXIS 78222, at *4-5.

The modest class representative award requests have been tailored to compensate the named Plaintiff and the early opt-in Plaintiff in proportion to his or her time and effort in prosecuting the claims asserted in this action, and the Court approves the requested payments.

## V. CONCLUSION

Having considered the Final Approval Motion, the Fee Approval Motion, the supporting declarations and exhibits, and the complete record in this Case, and for good cause shown:

1. The Court hereby **GRANTS** the Final Approval Motion and approves the settlement as set forth in the Settlement Agreement under Rule 23 and the FLSA. The Court, for purposes of this Order, adopts all defined terms set forth in the Settlement Agreement. The Court finds that the settlement is fair, reasonable, adequate, and it is not a product of collusion. The Court finds that this action satisfies the requirements of Rule 23 for settlement purposes only and further finds that the class has at all times been adequately represented by the Class Representative and Class Counsel. The notice approved by the Court was provided by first class direct mail and email to the last-known address of each of the individuals identified as class members, and followed by a reminder notice. In addition, follow-up efforts were made to send the notice to those individuals whose original notices were returned as undeliverable. The notice adequately described all of the relevant and necessary parts of the proposed Settlement, and class counsel's request for approval of an award of attorneys' fees and costs as set forth in the Fee Approval Motion. The Court finds that the notice given to the class fully complied with Rule 23, was the best notice practicable, satisfied all constitutional due process concerns, and provides the Court with jurisdiction over the class members. The Court has concluded that the Settlement, as set forth in the Settlement Agreement executed by the parties, is fair, reasonable, and adequate under state and federal laws, including the Fair Labor Standards Act, 29 U.S.C. § 201, et. seq. The Court finds that the uncertainty and delay of further litigation strongly supports the reasonableness and adequacy of the $1,125,000 settlement amount established pursuant to the Settlement Agreement.

2. The settlement is hereby **APPROVED** in its entirety.

3. The Settlement Fund shall be dispersed in accordance with the Settlement Agreement as detailed in Final Approval Motion.

4. Pursuant to the Settlement Agreement, the Court approves the service payments of $7,500 to the named Plaintiff and $1,000 to the original opt-in Plaintiff.

5. The Court approves the payment of $7,506 to the Settlement Administrator from the total settlement fund.

6. Plaintiffs' Unopposed Fee Approval Motion is **GRANTED**.

7. Class Counsel are awarded attorneys' fees and costs from the settlement in the amount of $375,000.

8. As provided in the Settlement Agreement, all Ohio Rule 23 class members who did not opt out of the Settlement but did not properly and timely file a Claim form have given the State Law Release as defined in the Settlement Agreement.

10. As provided in the Settlement Agreement, all class members who properly and timely submitted Claim forms have given the FLSA Release and, if applicable under the Settlement Agreement, the State Law Release, as those terms are defined in the Settlement Agreement.

11. The Court approves the Settlement Agreement as a stipulated **JUDGMENT** under *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) and *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1308 (11th Cir. 2013), with each party to bear his, her, or its own costs, except as set forth in this Order, and this Court expressly retains exclusive jurisdiction to enforce the Settlement Agreement, including over disbursement of the settlement amount.

12. The Court hereby enters its final Order approving the terms of the Settlement. The Clerk shall enter judgment accordingly pursuant to Rule 58 of the Federal Rules of Civil Procedure.

Entered this  26th  day of March, 2019.

/s/ Patricia A. Gaughan
Honorable Patricia A. Gaughan
United States District Judge